IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

UNITED STATES OF AMERICA

v.                                                    NO.

$8,000.53 IN FUNDS SEIZED FROM
JPMORGAN CHASE ACCOUNT
ENDING IN 3329;
$9,999.94 IN FUNDS SEIZED FROM
JPMORGAN CHASE ACCOUNT
ENDING IN 9588;
$9,110.01 IN FUNDS SEIZED FROM
JPMORGAN CHASE ACCOUNT
ENDING IN 0550;
$8,815.00 IN FUNDS SEIZED FROM
JPMORGAN CHASE ACCOUNT
ENDING IN 6039;
$7,213.69 IN FUNDS SEIZED FROM
JPMORGAN CHASE ACCOUNT
ENDING IN 0809;
$23,944.99 IN FUNDS SEIZED FROM
JPMORGAN CHASE ACCOUNT
ENDING IN 5957;
$21,677.88 IN FUNDS SEIZED FROM
JPMORGAN CHASE ACCOUNT
ENDING IN 1390;
$9,172.20 IN FUNDS SEIZED FROM
JPMORGAN CHASE ACCOUNT
ENDING IN 5270;
$7,012.58 IN FUNDS SEIZED FROM
JPMORGAN CHASE ACCOUNT
ENDING IN 0629;
$8,150.00 IN FUNDS SEIZED FROM
JPMORGAN CHASE ACCOUNT
ENDING IN 5872;
$16,000.05 IN FUNDS SEIZED FROM
JPMORGAN CHASE ACCOUNT
ENDING IN 8725;

$24,511.93 IN FUNDS SEIZED FROM
JPMORGAN CHASE ACCOUNT
ENDING IN 1251;
$8,573.43 IN FUNDS SEIZED FROM
JPMORGAN CHASE ACCOUNT
ENDING IN 2931;
$118,649.75 IN FUNDS SEIZED
FROM JPMORGAN CHASE
ACCOUNT ENDING IN 0650;
$8,910.00 IN FUNDS SEIZED FROM
JPMORGAN CHASE ACCOUNT
ENDING IN 8965;
$8,909.99 IN FUNDS SEIZED FROM
JPMORGAN CHASE ACCOUNT
ENDING IN 2723;
$9,899.99 IN FUNDS SEIZED FROM
JPMORGAN CHASE ACCOUNT
ENDING IN 0100;
$13,929.46 IN FUNDS SEIZED FROM
JPMORGAN CHASE ACCOUNT
ENDING IN 6933;
$7,972.78 IN FUNDS SEIZED FROM
JPMORGAN CHASE ACCOUNT
ENDING IN 4284;
$76,321.63 IN FUNDS SEIZED FROM
JPMORGAN CHASE ACCOUNT
ENDING IN 7565;
$88.00 IN FUNDS SEIZED FROM
JPMORGAN CHASE ACCOUNT
ENDING IN 5813;
$193.17 IN FUNDS SEIZED FROM
JPMORGAN CHASE ACCOUNT
ENDING IN 1189;
$4,764.36 IN FUNDS SEIZED FROM
JPMORGAN CHASE ACCOUNT
ENDING IN 9265
$3,990.01 IN FUNDS SEIZED FROM
JPMORGAN CHASE ACCOUNT
ENDING IN 5969;
$4,559.93 IN FUNDS SEIZED FROM
JPMORGAN CHASE ACCOUNT
ENDING IN 9381;

$4,777.64 IN FUNDS SEIZED FROM
JPMORGAN CHASE ACCOUNT
ENDING IN 3778;
$1,349.52 IN FUNDS SEIZED FROM
JPMORGAN CHASE ACCOUNT
ENDING IN 5821;
$807.44 IN FUNDS SEIZED FROM
JPMORGAN CHASE ACCOUNT
ENDING IN 2183;
$1,340.04 IN FUNDS SEIZED FROM
JPMORGAN CHASE ACCOUNT
ENDING IN 5339;
ALL FUNDS IN NORTHWESTERN
MUTUAL, PDIA POLICY ENDING
IN 6827, FBO SHERRY WOODLEE
(approximate value $500,000.00);
ALL FUNDS IN NORTHWESTERN
MUTUAL, PDIA POLICY ENDING
IN 6851, FBO VINSON WOODLEE
(approximate value $500,000.00);
2019 MERCEDES-BENZ GLS 550
(VIN 4JGDF7DE2KB186559)
REAL PROPERTY LOCATED AT 36
GRANADILLA, BOERNE, TEXAS
REAL PROPERTY LOCATED AT
2102 WRIGHT STREET, AUSTIN,
TEXAS
REAL PROPERTY LOCATED AT
7222 BELLA BLUFF, SAN
ANTONIO, TEXAS
            Defendants *In Rem.*

## COMPLAINT FOR FORFEITURE

Plaintiff, United States of America, by its undersigned attorneys, Erin Nealy Cox,

United States Attorney for the Northern District of Texas, and Chad E. Meacham,

Assistant United States Attorney, brings this complaint and alleges as follows in

accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure:

## NATURE OF THE ACTION

1.      This is an action to forfeit property to the United States pursuant to 18

U.S.C. § 981(a)(1)(A) and (a)(1)(C).

## THE DEFENDANTS *IN REM*

2.      The defendant property consists of the following property, which was seized on

or about June 10, 2019:

a.      $8,000.53 in funds seized from JPMorgan Chase account in the name of Angelina Management Group, LLC ending in 3329;

b.      $9,999.94 in funds seized from JPMorgan Chase account in the name of August Legacy Business Solutions, LLC ending in 9588;

c.      $9,110.01 in funds seized from JPMorgan Chase account in the name of Austin Group Management, LLC ending in 0550;

d.      $8,815.00 in funds seized from JPMorgan Chase account in the name of Bastrop FHC Management, LLC ending in 6039;

e.      $7,213.69 in funds seized from JPMorgan Chase account in the name of Blue Heron Business Solutions, LLC ending in 0809;

f.      $23,944.99 in funds seized from JPMorgan Chase account in the name of Genisys Healthcare Partners, LLC ending in 5957;

g.      $21,677.88 in funds seized from JPMorgan Chase account in the name of Haydon D. Woodlee or Sherry L. Woodlee ending in 1390;

h.      $9,172.20 in funds seized from JPMorgan Chase account in the name of Hexamed Business Solutions, LLC ending in 5270;

i.      $7,012.58 in funds seized from JPMorgan Chase account in the name of Houston LIH Management, LLC ending in 0629;

j.      $8,150.00 in funds seized from JPMorgan Chase account in the name of Houston PAA Management, LLC ending in 5872;

k.   $16,000.05 in funds seized from JPMorgan Chase account in the name of Idealign Business Solutions, LLC ending in 8725;

l.   $24,511.93 in funds seized from JPMorgan Chase account in the name of Jandon Enterprises, LLC ending in 1251;

m.   $8,573.43 in funds seized from JPMorgan Chase account in the name of Jandon Medical Staffing, LLC ending in 2931;

n.   $118,649.75 in funds seized from JPMorgan Chase account in the name of Med Left, LLC ending in 0650;

o.   $8,910.00 in funds seized from JPMorgan Chase account in the name of North Harris Group Management, LLC ending in 8965;

p.   $8,909.99 in funds seized from JPMorgan Chase account in the name of Plano DIM Management, LLC ending in 2723;

q.   $9,899.99 in funds seized from JPMorgan Chase account in the name of Texas EHM Management, LLC ending in 0100;

r.   $13,929.46 in funds seized from JPMorgan Chase account in the name of Trinity Champion Healthcare Partners, LLC ending in 6933;

s.   $7,972.78 in funds seized from JPMorgan Chase account in the name of Trinity Living Trust ending in 4284;

t.   $76,321.63 in funds seized from JPMorgan Chase account in the name of Janson Woodlee ending in 7565;

u.   $88.00 in funds seized from JPMorgan Chase account in the name of Dayne Healthcare Enterprises, LLC ending in 5813;

v.   $193.17 in funds seized from JPMorgan Chase account in the name of Houston XXXI Management, LLC ending in 1189;

w.   $4,764.36 in funds seized from JPMorgan Chase account in the name of Sherry L. Woodlee or Vinson Woodlee ending in 9265;

x.   $3,990.01 in funds seized from JPMorgan Chase account in the name of Merit Integrity Healthcare Partners, LLC ending in 5969;

y.      $4,559.93 in funds seized from JPMorgan Chase account in the name of Baytown Group Management, LLC ending in 9381;

z.      $4,777.64 in funds seized from JPMorgan Chase account in the name of Riva Reserve Healthcare Partners, LLC ending in 3778;

aa.     $1,349.52 in funds seized from JPMorgan Chase account in the name of Southern Cross Healthcare Partners, LLC in ending in 5821;

bb.     $807.44 in funds seized from JPMorgan Chase account in the name of Agent Starling Enterprises, LLC ending in 2183;

cc.     $1,340.04 in funds seized from JPMorgan Chase account in the name of South Harris Group Management, LLC ending in 5339;

dd.     All funds in Northwestern Mutual policy ending in 6827, fbo Sherry Woodlee (approximate value $500,000.00);

ee.     All funds in Northwestern Mutual policy ending in 6851, fbo Vinson Woodlee (approximate value $500,000.00);

ff.     2019 Mercedes-Benz GLS 550 (VIN 4JGDF7DE2KB186559);

gg.     Real property located at 36 Granadilla, Boerne, Texas, legally described as the real property located at Lot 50, Block A, Cordillera Ranch, Unit 106A, a subdivision in Kendall County, Texas, according to the plat recorded in Volume 5, page(s) 131-134, map and/or plat records of Kendall County, Texas;

hh.     Real property located at 2102 Wright Street, Austin, Texas, legally described as the real property located at Lot 5A, of amended plat of Lot 5 and 6 Knox Wright Subdivision, a subdivision in Travis County, Texas, according to the plat thereof recorded in Document Number 201600292, of the Official Public Records of Travis County, Texas; and

ii.     Real property located at 7222 Bella Bluff, San Antonio, Texas, legally described as the real property located at Lot 1, Block 22, New City Block 18333, Creta Bella, Unit 4A-7B 1 Enclave, in the City of San Antonio, Bexar County, Texas, according to the play thereof recorded in Volume 9669, Page 58, Deed and Play Records, Bexar County Texas.

## JURISDICTION AND VENUE

3.     The court has subject matter jurisdiction over this action based on 28

U.S.C. §§ 1345 and 1355(a), since this is a forfeiture action commenced by the United

States of America.

4.     The court has *in rem* jurisdiction over the defendant property under 28

U.S.C § 1355(b).

5.     Venue is proper in this district under 28 U.S.C. § 1355(b)(1)(A) because

acts or omissions giving to rise to forfeiture occurred in this district.

## LOCATION OF DEFENDANT PROPERTY

6.     The defendant property was seized by the Federal Bureau of Investigation

(FBI) in the Northern and Western Districts of Texas.  The defendant property is now

being held:

a.     The property described in paragraph 2(a) – (cc) is being held in the seized

asset deposit fund account at the Federal Reserve Bank for the Northern District of

Texas;

b.     The property described in paragraph 2(dd) and (ee) has been "frozen" by

Northwestern Mutual in lieu of liquidating the accounts.

c.     The vehicle described in paragraph 2(ff) is currently being stored with the

U. S. Marshals in the Western District of Texas.

7.     The defendant property described as real property in paragraphs 2(gg) –

(ii) has not been seized.  In lieu of seizure, the government, as provided in 18 U.S.C. §

985, will:

a.      Post notice of this action and a copy of this Complaint on the defendant real property; and

b.      Serve notice of this action and a copy of this Complaint on each title owner and any other person or entity who may claim an interest in the defendant real property; and

c.      Record a Notice of Lis Pendens against the defendant real property.

## NOTICE AND POTENTIAL CLAIMANTS

8.      The names and last known addresses of those individuals or entities reasonably appearing to the government at this time to be potential claimants to the defendant property are:

> Vinson Woodlee
> c/o Tom Melsheimer, Grant Schmidt, and Scott Thomas
> Winston & Strawn LLP
> 2121 N. Pearl Street, Suite 900
> Dallas, Texas  75201
>
> Sherry Woodlee
> c/o Tom Melsheimer, Grant Schmidt, and Scott Thomas
> Winston & Strawn LLP
> 2121 N. Pearl Street, Suite 900
> Dallas, Texas  75201
>
> Janson Woodlee
> c/o Tom Melsheimer, Grant Schmidt, and Scott Thomas
> Winston & Strawn LLP
> 2121 N. Pearl Street, Suite 900
> Dallas, Texas  75201
> c/o David Finn
> 2828 North Harwood Street, Suite 1950
> Dallas, Texas 75201

Haydon Woodlee
c/o Tom Melsheimer, Grant Schmidt, and Scott Thomas
Winston & Strawn LLP
2121 N. Pearl Street, Suite 900
Dallas, Texas  75201

Med Left, LLC
c/o Tom Melsheimer, Grant Schmidt, and Scott Thomas
Winston & Strawn LLP
2121 N. Pearl Street, Suite 900
Dallas, Texas  75201

9.     Notice of this complaint will be provided to the above-listed individuals and entity through their attorneys.

## BASIS FOR FORFEITURE

### Next Health

10.     Next Health is defined herein as an "umbrella" business entity that maintained a hierarchical structure of corporations and other entities that owned and controlled numerous other entities including pharmacies and laboratories that operated in the health care industry.  Next Health previously operated, among other names, as Business Partners in Health and later as Critical Healthcare Management. For the purposes of this Forfeiture Complaint, references to Next Health include all of these entities as well as all of their associated business entities.  This includes Next Health's Class G pharmacies and their related "parent" company Pharma Holdings US (PHUS).  Next Health began operations in about 2012 and was operating under the "umbrella" name of Critical Healthcare Management when federal search warrants were executed at its offices in July of 2018.

11.     Next Health was principally controlled by Andrew Hillman and
Semyon Narosov.  Through various entities, Hillman and Narosov owned a majority
of Next Health at one time but their ownership interest decreased after they were
indicted for participating in a health care kickback conspiracy in the Forrest Park
Medical Center case.   Regardless of their actual ownership interest or official
positions within Next Health, Hillman and Narosov continued to control and direct
the activities of Next Health until their arrest and incarceration in July 2018.  Hillman
and Narosov have pleaded guilty in Cause No. 3:18-CR-475 for money laundering
related to healthcare fraud proceeds.

12.     Focusing on Next Health's pharmacy operations, at its most simplistic
level, the fraudulent business model identified the most profitable prescriptions (i.e.
lowest available wholesale cost with highest available reimbursement rates from
private and government insurance providers).  These prescriptions included
compounding pain and scar creams, etc., which generated high co-pays for many
beneficiaries.  Many beneficiaries refused or were unable to pay the required co-pays.
In order to continue filling the highly profitable prescriptions, Next Health created
and executed several fraudulent co-pay schemes to make it appear to insurance
companies that Next Health was collecting co-pays from patients as required for
reimbursement by the insurance providers.

13.     Next Health pharmacies billed private and government health care
benefit programs approximately $720,886,416.27 from 2012 through 2018.  Not a

single prescription would have been filled if it had not been initially prescribed by a

medical doctor (referred to herein as "doctor" or "physician").

### Payments to physicians

14.     Doctors, marketers, pharmacists, and healthcare executives understand

that pharmacies cannot legally pay a kickback to a prescribing doctor in return for the

doctor writing prescriptions fillable at that pharmacy.

### Illegal investment in Class G Pharmacies

15.     To conceal the illegal practice of paying doctors for their prescriptions,

Next Health had doctors make a nominal investment in a Class G pharmacy.  For

example, a doctor would invest $250 for a 1% ownership interest in a Class G

Pharmacy.  To create the appearance of legitimacy, Next Health "modeled" their

Class G pharmacy investment scheme on the safe-harbor investment practices for

doctors under the Federal Anti-Kickback statute (AKS).  Next Health's Class G

pharmacy investment scheme did not meet the requirements of the safe harbor

provisions.  For example, the "investment" was only open to prescription writing

doctors.  Further, doctors who did not write a sufficient number of prescriptions had

their ownership reduced or were divested all together.

16.     Next Health provided monthly reports to the doctors which made plain

that the profits in the invested pharmacies were driven directly by prescriptions

written by the invested doctors.  In practice, each invested doctor got a return-on-

investment for each prescription written by that doctor, and on each prescription

written by the other invested doctors.  The Class G pharmacies normally split net profits 60% for Next Health and 40% for the invested doctors.

Illegal kickbacks through marketers

17.     Not all physicians who wrote prescriptions for the Next Health pharmacies were investors in the Class G's.  Many physicians received kickbacks from marketers in return for prescriptions filled by Next Health pharmacies.

18.     These illegal kickbacks to doctors in many instances were made under alleged management services organizations (MSOs).  In the context of Next Health's illegal pharmacy scheme, the MSOs acted as cover for payments to doctors in return for prescriptions to be filled at Next Health pharmacies.

19.     The prescriptions were submitted to Next Health pharmacies through electronic wire communications including the use of facsimile machines.  The filled prescriptions were then usually shipped by United States mail or interstate commercial carriers to the patient.  Next Health used various means of electronic communication to bill government and private pay insurance providers and then distributed the funds generated by the scheme to invested physicians and marketers.

Vinson Woodlee/Med Left, LLC.

20.     Vinson Woodlee and his company, Med Left, LLC, acted as marketer for Next Health.  Woodlee also operated a number of MSO entities which he used to pay doctors kickbacks as described above.  "Med Left" when used in this complaint means Med Left, LLC and approximately 73 other MSOs that were owned and

operated by Woodlee or Woodlee family members (also referred to sometimes as the Med Left entities).

21.     Pursuant to his agreement with Next Health, Woodlee was generally paid 50% of net profits on commercial pay prescriptions written by "his" doctors and filled at Next Health pharmacies.  Woodlee then made payments to physicians, sometimes described as "commissions."  Woodlee was initially paid for "Federal health care program" referrals in violation of the AKS through fictitious W-2 wages paid to one or more family members who did not actually work for PHUS or any other Next Health entity.  Later in time, Next Health ceased the fictitious employee wages for family members and increased Woodlee's share of the profit on commercial business to greater than 50% to reward Woodlee for the federal referrals.

22.     From January 2012 to October 2018, Next Health, primarily through the PHUS bank accounts, paid the Med Left entities approximately $60,600,000.00 in proceeds from the above described scheme.  These funds were deposited primarily into JPMorgan Chase bank accounts ending in 6050 and 3939.

23.     Woodlee or others then further distributed these proceeds as follows (all amounts are approximate):

a.     $6.6 million was paid directly to approximately 61 physicians, sometimes through other entity accounts created by the physician to further disguise the proceeds.

b.     $28.4 million was transferred directly to sub-marketers working with Woodlee and Med Left.

**Complaint for Forfeiture - Page 13 of 22**

c.      $22.7 million was transferred to 73 MSO/shell corporations.  Of the 73 shell corporations, the top 46 were analyzed in detail and that analysis shows further payments of $10.3 million to 145 physicians or groups of physicians:

      i.      $2.2 million was further transferred from the shell corporations to sub-marketers;

      ii.      $8.8 million was transferred to Woodlee personal accounts and used to purchase items including residences, vehicles, and other investments; and

d.      $9.9 million was used for other expenses or went to other unknown or non-pertinent entities.

24.      In summary, from the over $60 million that Woodlee/Med Left received from Next Health, approximately $16.8 million was paid directly to 189 physicians or physician groups and $30.6 million was paid to sub-marketers that likely further sub-divided those funds and paid a portion of them to physicians for prescriptions written by them that had been filled at Next Health pharmacies.

<u>Grounds supporting forfeiture of specific Defendant *In Rem* properties</u>

25.      On or about June 10, 2019, the FBI seized funds from the following accounts:

a.      $8,000.53 in funds seized from JPMorgan Chase account ending in 3329;

b.      $9,999.94 in funds seized from JPMorgan Chase account ending in 9588;

c.      $9,110.01 in funds seized from JPMorgan Chase account ending in 0550;

d.      $8,815.00 in funds seized from JPMorgan Chase account ending in 6039;

e.      $7,213.69 in funds seized from JPMorgan Chase account ending in 0809;

f.      $23,944.99 in funds seized from JPMorgan Chase account ending in 5957;

g.      $21,677.88 in funds seized from JPMorgan Chase account ending in 1390;

h.      $9,172.20 in funds seized from JPMorgan Chase account ending in 5270;

i.      $7,012.58 in funds seized from JPMorgan Chase account ending in 0629;

j.      $8,150.00 in funds seized from JPMorgan Chase account ending in 5872;

k.      $16,000.05 in funds seized from JPMorgan Chase account ending in 8725;

l.      $24,511.93 in funds seized from JPMorgan Chase account ending in 1251;

m.      $8,573.43 in funds seized from JPMorgan Chase account ending in 2931;

n.      $118,649.75 in funds seized from JPMorgan Chase account ending in 0650;

o.      $8,910.00 in funds seized from JPMorgan Chase account ending in 8965;

p.      $8,909.99 in funds seized from JPMorgan Chase account ending in 2723;

q.      $9,899.99 in funds seized from JPMorgan Chase account ending in 0100;

r.      $13,929.46 in funds seized from JPMorgan Chase account ending in 6933;

s.      $7,972.78 in funds seized from JPMorgan Chase account ending in 4284;

t.      $76,321.63 in funds seized from JPMorgan Chase account ending in 7565;

u.      $88.00 in funds seized from JPMorgan Chase account ending in 5813;

v.      $193.17 in funds seized from JPMorgan Chase account ending in 1189;

w.      $4,764.36 in funds seized from JPMorgan Chase account ending in 9265;

x.      $3,990.01 in funds seized from JPMorgan Chase account ending in 5969;

y.      $4,559.93 in funds seized from JPMorgan Chase account ending in 9381;

z.      $4,777.64 in funds seized from JPMorgan Chase account ending in 3778

aa.     $1,349.52 in funds seized from JPMorgan Chase account ending in 5821;

bb.     0$807.44 in funds seized from JPMorgan Chase account ending in 2183; and

cc.     $1,340.04 in funds seized from JPMorgan Chase account ending in 5339.

26.     The funds seized from the JPMorgan Chase bank accounts are subject to forfeiture to the United States because the funds were proceeds derived from or traceable to the following violation(s) of federal criminal law and conspiracy to commit same:

    a. mail wire fraud in violation of 18 U.S.C. §§ 1341, 1346 and 1349;

    b. wire fraud in violation of 18 U.S.C. §§ 1343, 1346 and 1349;

    c. healthcare fraud in violation of 18 U.S.C. §§ 1347 and 1349;

    d. travel act in violation of 18 U.S.C. § 1952 predicated on two independent Texas state bribery offenses - Texas Commercial Bribery in violation of Texas Penal Code § 32.43 and the Texas Anti-Patient Solicitation Act in violation of Texas Occupations Code § 102.001;

    e. the laundering of monetary instruments in violation of 18 U.S.C. § 1956 and 1957; and/or

    f. illegal remuneration (AKS) – 42 U.S.C. § 1320a-7b(b).

27. The funds seized from the JPMorgan Chase bank accounts are subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(A), as property involved in a transaction or attempted transaction in violation of 18 U.S.C. §§ 1956 and/or 1957.

28. The funds seized from the JPMorgan Chase bank accounts are subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(C), as property which constitutes or is derived from proceeds traceable to an offense constituting "specified unlawful activity" as defined in 18 U.S.C. § 1956(c)(7).

29. On or about June 10, 2019, the following accounts were frozen by Northwestern Mutual:

dd.  All funds in Northwestern Mutual policy ending in 6827, fbo Sherry Woodlee (approximate value $500,000.00);

ee.  All funds in Northwestern Mutual policy ending in 6851, fbo Vinson Woodlee (approximate value $500,000.00);

30.  The funds maintained by Northwestern Mutual are subject to forfeiture to the United States because the funds were proceeds derived from or traceable to the following violation(s) of federal criminal law and/or conspiracy to commit same:

a.  mail wire fraud in violation of 18 U.S.C. §§ 1341, 1346 and 1349;

b.  wire fraud in violation of 18 U.S.C. §§ 1343, 1346 and 1349;

c.  healthcare fraud in violation of 18 U.S.C. §§ 1347 and 1349;

d.  travel act in violation of 18 U.S.C. § 1952 predicated on two independent Texas state bribery offenses - Texas Commercial Bribery in violation of Texas Penal Code § 32.43 and the Texas Anti-Patient Solicitation Act in violation of Texas Occupations Code § 102.001;

e.  the laundering of monetary instruments in violation of 18 U.S.C. § 1956 and 1957; and/or

f.  illegal remuneration (AKS) – 42 U.S.C. § 1320a-7b(b).

31.  The funds maintained by Northwestern Mutual are subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(A), as property involved in a transaction or attempted transaction in violation of 18 U.S.C. §§ 1956 and/or 1957.

32.  The funds maintained by Northwestern Mutual bank accounts are subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(C), as property which

constitutes or is derived from proceeds traceable to an offense constituting "specified unlawful activity" as defined in 18 U.S.C. § 1956(c)(7).

33.     On or about June 10, 2019, the FBI seized a 2019 Mercedes-Benz GLS 550 (VIN 4JGDF7DE2KB186559) - Defendant Property (ff).

34.     This vehicle is subject to forfeiture to the United States because it represents the proceeds derived from or traceable to the following violation(s) of federal criminal law and/or conspiracy to commit same:

      a.   mail wire fraud in violation of 18 U.S.C. §§ 1341, 1346 and 1349;

      b.   wire fraud in violation of 18 U.S.C. §§ 1343, 1346 and 1349;

      c.   healthcare fraud in violation of 18 U.S.C. §§ 1347 and 1349;

      d.   travel act in violation of 18 U.S.C. § 1952 predicated on two independent Texas state bribery offenses - Texas Commercial Bribery in violation of Texas Penal Code § 32.43 and the Texas Anti-Patient Solicitation Act in violation of Texas Occupations Code § 102.001;

      e.   the laundering of monetary instruments in violation of 18 U.S.C. § 1956 and 1957; and/or

      f.   illegal remuneration (AKS) – 42 U.S.C. § 1320a-7b(b).

35.     This vehicle is subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(A), as property involved in a transaction or attempted transaction in violation of 18 U.S.C. §§ 1956 and/or 1957.

36.     This vehicle is subject to forfeiture is subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(C), as property which constitutes or is derived from proceeds traceable to an offense constituting "specified unlawful activity" as defined in 18 U.S.C. § 1956(c)(7).

37.     The following have not been seized but notice of lis pendens will be filed against the following real property defendants immediately after the filing of this civil asset forfeiture action:

gg.     Real property located at 36 Granadilla, Boerne, Texas;

hh.     Real property located at 2102 Wright Street, Austin, Texas; and

ii.     Real property located at 7222 Bella Bluff, San Antonio, Texas.

38.     These parcels of real property are subject to forfeiture to the United States because they represent the proceeds derived from or traceable to the following violation(s) of federal criminal law and/or conspiracy to commit same:

a.  mail wire fraud in violation of 18 U.S.C. §§ 1341, 1346 and 1349;

b.  wire fraud in violation of 18 U.S.C. §§ 1343, 1346 and 1349;

c.  healthcare fraud in violation of 18 U.S.C. §§ 1347 and 1349;

d.  Travel Act in violation of 18 U.S.C. § 1952 predicated on two independent Texas state bribery offenses - Texas Commercial Bribery in violation of Texas Penal Code § 32.43 and the Texas Anti-Patient Solicitation Act in violation of Texas Occupations Code § 102.001;

e.  the laundering of monetary instruments in violation of 18 U.S.C. §
1956 and 1957; and/or

f.  illegal remuneration (AKS) – 42 U.S.C. § 1320a-7b(b).

39.   These parcels of real property are subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(A), as property involved in a transaction or attempted transaction in violation of 18 U.S.C. §§ 1956 and/or 1957.

40.   These parcels of real property are subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(C), as property which constitutes or is derived from proceeds traceable to an offense constituting "specified unlawful activity" as defined in 18 U.S.C. § 1956(c)(7).

## RELIEF SOUGHT

Therefore, the United States requests the following:

A.   Notice of this action be given to all persons who reasonably appear to be potential claimants of interests in the defendant property, including by posting by the United States Marshal or his designee in accordance with 18 U.S.C. § 985(c)(1)(B), and by publication on the official government internet site www.forfeiture.gov for at least 30 consecutive days in accordance with Supplemental Rule G(4)(a).

B.   All persons having any interest in or right to the defendant property be advised to timely file a verified claim identifying such interest or right in this court as required by Rule G(5)(a) and 18 U.S.C. § 983(a)(4)(A) and to file an answer to this Verified Complaint for Forfeiture or motion under Federal Rule of Civil Procedure 12 in the manner required by the provisions of Rule G(5)(b) of the Supplemental Rules and

18 U.S.C. § 983(a)(4)(B).  Any person filing a verified claim of interest or right and/or

an answer shall serve a copy of same on the undersigned Assistant United States

Attorney;

      C.      That the court, after all proceedings are had on this complaint for

forfeiture, declare the defendant property forfeited to the United States according to law;

      D.      That the court grant the United States any further relief, at law or in

equity, to which it may show itself justly entitled.

Respectfully submitted,
ERIN NEALY COX
UNITED STATES ATTORNEY


s/ Chad E. Meacham
Chad E. Meacham
Assistant United States Attorney
Texas State Bar No. 00784584
Andrew O. Wirmani
Assistant United States Attorney
Texas Bar No. 24052287
Dimitri N. Rocha
Assistant United States Attorney
Florida State Bar No. 693332
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Tel:  214-659-8600 (telephone)
Email:  chad.meacham@usdoj.gov
Email:  Andrew.Wirmani@usdoj.gov
Email:  Dimitri.Rocha@usdoj.gov
